LENA WHITE ET AL. *v.* C. V. RATCLIFF, ADMINISTRATOR, ET AL.

[54 South. 658.]

LIFE INSURANCE. *Policy Assignment.*

> Where the insured shortly after obtaining a policy on his life, payable to his executors, administrators or assigns, pins a certificate to the policy making his father the sole beneficiary, but not intending to assign the policy to his father or change the beneficiary therein, except in such manner as would leave him the full control of the policy, and kept the policy in his own possession, such a certificate being revocable at his pleasure and testamentary in character and not executed with the formalities of a will is void.

APPEAL from the chancery court of Pike county.
HON. J. S. HICKS, Chancellor.

Suit by C. V. Ratcliff, administrator, against Lena White et al. From a decree directing the money in the

insurance policy to be paid to the father of the insured, defendants appeal.

The facts are fully stated in the opinion of the court.

*Cassidy & Butler,* for appellant.

The question is, was this a valid assignment of the policy or was it an ineffectual attempt to make a will? We contend that there was no valid assignment because there was neither a delivery of the policy or a written instrument. We admit that no particular words are necessary to constitute a valid assignment of a chose in action. Any language or act which makes an appropriation of a fund amounts to an assignment. 2d Ency. Law, 1055. But where there is a note, bond or written obligation there must be a delivery of the instrument or at least a delivery of the separate writing if transferred by writing. 2d Ency. Law, 1055; *Palmer* v. *Merrill,* 6 Cush. (Mass.) 282; S. C., 52 Am. Dec. 782.

In *Palmer* v. *Merrill, supra,* it was held that the endorsement by the insured upon an insurance policy directing the insurers to pay a portion of the amount due to a third person and the endorsement being notified to the insurer; but the instrument remaining in the hands of the insured did not constitute a valid assignment.

In notes to Am. Dec., vol. 7, 1166, there is collected all the authority wherein this case has been cited and discussed. We have been unable to find but two cases on all fours with the instant case. They are *Coffman* v. *Leggett,* 107 Va. 418; *Williams* v. *Chamberlain,* 165 Ill. 210.

We say that the instrument was an ineffectual attempt to make a will.

"Whether a writing intended as a will, may be shown by parol testimony or by such testimony together with the writing." *Prather* v. *Prather,* 52 So. 449. If the paper is testamentary in character and passes no present interest in the property it may be admitted as a will

and if such is uncertain from an inspection of the paper it may be shown by parol. *Wall* v. *Wall,* 30 Miss. 96; *Sortar* v. *Sortar,* 39 Miss. 760.

*C. V. Ratcliff,* for appellee.

The written change of beneficiary is sufficient. It is at least a suggestion or an order to change, and this is sufficient. See *Spratley* v. *Hartford Insurance Co.,* Fed. Cas., No. 13256 (1 Dill. 392). It is said there: "An order by the insured directing the insurer to pay the amount of the loss to a certain person makes him an assignee of the cause of action and the real party in interest." Such order or assignment is binding even though it had been by parol. See *Brown* v. *Mansus,* 64 N. H. 39, 5th Alt. 768. It is said there: "One who has received a certificate of life insurance on his life, payable to his heirs, may assign the same by parol to the mother of his illegitimate child for its support, when the company does not object." See also, *Springfield Fire & Marine Insurance Co.* v. *Newman,* 17 Minn. 123 (Gill. 98).

An assignment or change of the beneficiary of a life policy need not be in writing even: See *McCauley* v. *Central National Bank,* 27 S. C. 215, 3 S. E. 193. *In re Babcock,* 12 N. Y. St. Rep. 841; *Meadows Guardian* v. *Meadows, Administrator,* 13 Ky. Law Rep. 495.

An assignment of a life insurance policy need not be accompanied by an actual delivery thereof. See *Spring* v. *S. C. Insurance Co.,* 21 U. S. (8 Wheat.) 268, 5 L. Ed. 614.

In the instant case the company knew of the change of beneficiary, and the company's agent wrote it, and the change was to the father. This holding is from a court of high repute.

The policy was assignable of course: See, *Stuart* v. *Sutliff,* 46 Ann. 240, 14 So. Rep. 912; *Murphy* v. *Red,*

64 Miss. 614, 1 So. Rep. 761; *Grant* v. *Independent Order of Sons and Daughters of Jacob, et al.,* 52 Rep. 698.

If the company in this case had declined to pay the death claim under the policy, the assignee, J. F. White could have enforced payment to him on his assignment or change of beneficiary. See *St. John* v. *The American Mutual Life Insurance Company,* 13 N. Y. (3 Kern.) 31, 64 Am. Dec. 529, affirming 9 N. Y. Sup. Ct. (2 Duer.) 419; also, *Carraher* v. *Metropolitan Life Insurance Co.,* 11 N. Y. St. Rep. 665.

A change of beneficiary is, in effect, an assignment, and must be so treated. See, 9 L. R. A. 841; especially latter part of opinion and notes.

Bliss on Insurance, No. 333; May on Insurance, No. 388 and 396, and authorities there cited.

We submit that the question of intent and purpose of Yancey E. White, were fairly and distinctly submitted to the chancellor, and guided by the assignment and the testimony, which was abundant in this regard, and without contradiction, the chancellor correctly decided that the assignment or change of beneficiary was sufficient under the law, to direct the payment of the proceeds of the policy to be made to J. F. White, beneficiary, and that the decree should be affirmed.

SMITH, J., delivered the opinion of the court.

Prior to his marriage, Mr. Yancey E. White obtained from the Union Central Life Insurance Company a policy upon his life, payable in the event of his death to his executors, administrators, or assigns. When the policy was delivered, or shortly thereafter, White stated to the agent of the company that in the event he should die without having married he wanted his father to receive the benefit of the policy, but in the event of his marriage he desired his wife to have the benefit thereof. The agent then wrote the following memorandum, which was signed by White and then pinned to the policy:

"McComb City, Miss., Oct. 1, 1902.

"This is to certify that I, Yancey E. White, have this day made my father, J. E. White, the sole beneficiary of the policy in the event of my death by accident or otherwise. Witness my hand this the day of October, 1902.

his

"Yancey X E. White."

mark

When this was done, White understood, according to the agent of the company, that he could take this memorandum out of the policy at any time he desired, and in that event the policy would be payable to his executors, etc., as written in the face thereof. One of White's brothers testified that he was present when this policy was delivered, and that it was understood that White had willed to his father, "unless he taken a notion to change it." After receiving the policy, White showed it to his father, together with the memorandum attached thereto, and said to him: "See here what I have done. None of the rest of the boys in the family have done this much for you . * * * If you outlive me, you will get it." His father then told him to put it away. White, who at this time was living with his father, put the policy in his trunk, and afterwards, when he left his father's house and established a home of his own, carried the policy with him. The policy, with the memorandum pinned to it, remained in his trunk until death. In the meantime White married, and at his death left surviving him a widow and two children. White paid no premiums on this policy after his marriage, and seems to have been under the impression that it had thereby lapsed. The policy was in fact still in force, by reason of an extended insurance clause contained therein, and after White's death was by the company paid to his administrator. White's father claims to be the beneficiary of this policy, and this proceeding was instituted

in order to ascertain whether the money in the hands of the administrator should be paid to his father or to his widow and children. From a decree directing that the money be paid to the father, this appeal is taken.

It is manifest that White never intended to assign this policy to his father, and it is equally manifest that he did not intend to change the beneficiary therein, except in such manner as would leave him in full control of the situation. In order to do this, he executed an instrument, revocable at his pleasure, by which he directed what disposition should be made of the policy after his death. Such an instrument is testamentary in character, and, to be valid, must be executed with all the formalities attending the execution of a will. This instrument, not having been so executed, is void.

*Reversed and remanded.*